UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
:
OMEGA ADVISORS, INC., :
:
:
:
Plaintiff, :
v. : Civil Action No. 10-912 (JAP)
:
:
FEDERAL INSURANCE COMPANY, :
:
: **OPINION**
Defendant. :
_____:

PISANO, District Judge.

Plaintiff Omega Advisors, Inc. ("Omega" or "Plaintiff") brings this action against defendant Federal Insurance Company ("Federal" or "Defendant") alleging that Federal breached a duty to indemnify Omega for a loss allegedly covered under an insurance policy. Presently before the Court is Federal's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons below, Defendant's motion is granted.

## I. Background[1]

According to the complaint, Omega and its subsidiaries were insured under a Financial Institution Bond policy of insurance issued by Federal bearing Bond number 81391640 DFI (the "Policy"). The Policy was in force during the following periods: April 13, 2007 to April 13, 2008; May 13, 2008 to April 13, 2009; and April 13, 2009 to April 13, 2010. Among other things, the Policy provided coverage for employee dishonesty and had a single loss limit of $5 million and an aggregate limit of $5 million.

---

[1] In addressing a motion to dismiss, the Court must accept as true the allegations contained in a complaint. *See Toys "R" US, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003); *Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1301 (3d Cir. 1996). Accordingly, the facts recited herein are taken from the First Amended Complaint unless otherwise indicated and do not represent this Court's factual findings.

Clayton Lewis was a senior employee of Omega who was head of Omega's Emerging Markets Group. During his employment with Omega, Lewis was tasked with evaluating an investment opportunity in privatization securities issues by the Republic of Azerbaijan (the "Azeri Investment"). In connection with this investment, the Republic of Azerbaijan issued two types of securities, "Vouchers" and "Options." Vouchers were sold to Azeri citizens and could be used to bid for state-owned companies in government-sponsored privatization auctions. Vouchers could be sold in the secondary market, but Voucher holders who were not Azeri citizens could exercise the Vouchers only if they purchased one Option for each Voucher they wished to exercise.

This investment was introduced to Omega and Lewis by a Czech businessman, Viktor Kozeny. Lewis was responsible for evaluating the proposal, making recommendations to Omega about the proposal, overseeing due diligence, negotiating the terms of the investment and ensuring that Kozeny complied with such terms. After studying the investment, Lewis advised Omega and its clients that he considered the investment "the best opportunity he had ever seen." Compl. ¶ 14.

Consequently, Omega and its clients committed approximately $164 million to the Azeri investment. Lewis was charged with overseeing the investment on behalf of Omega and its clients, and he had control of the Omega funds allocated for the purchase of the Vouchers and Options. However, the complaint alleges that Lewis conspired with Kozeny and "engaged in serious wrongdoing with respect to the Azeri Investment." *Id.* ¶ 18.

On February 10, 2004, Lewis pleaded guilty in United States District Court in the Southern District of New York to a charge that he violated and conspired to violate the Foreign Corrupt Practices Act in connection with the Azeri investment. In October 2005, the United

States government unsealed the Information to which Lewis had pleaded guilty. In his plea, Lewis admitted that, prior to Omega's investment, Lewis had been told by Kozeny of corrupt arrangements with Azeri government officials and, further, that Lewis was aware of payments to Azeri officials in connection with purchases of the Vouchers. Lewis also pleaded guilty to a charge of perjury in New York state court in connection with his testimony before a grand jury.

On February 2, 2006, Omega filed an action in the Southern District of New York against Lewis captioned *Omega Advisors, Inc. v. Lewis*, Civil Action No. 06-834 (the "New York Action"). Affidavit of Michael Simmons ("Simmons Aff.") at Ex. 2. That action alleged that "Lewis committed fraud, and breaches of contract and fiduciary duty, which caused Omega damages in excess of $485 million." *Id.*, Ex. 2 at ¶ 4. The complaint sought damages "in excess of $465 million" for fraud and breach of fiduciary duty and damages "in excess of $30 million" for breach of contract. *Id.* 17-18. The complaint also alleged that Lewis conveyed approximately $15 million to one or more trusts for his or his family's benefit fraudulently intending to preclude recovery by Omega, and Omega sought an order restraining Lewis from disposing his interest in the trust and/or setting aside the conveyance.

In 2007, Omega entered into a non-prosecution agreement with the United States Attorney for the Southern District of New York pursuant to which Omega agreed to pay $500,000 to the Department of Justice in connection with Lewis's action. Omega then paid this amount.

Shortly thereafter, by letter dated August 2, 2007, Omega notified Federal of a claim under the Policy. Omega advised Federal that is was seeking reimbursement from Federal for monies paid to the United States and for legal fees and costs incurred in connection with the U.S. government's investigation. That letter also advised Federal that Omega had filed a civil lawsuit

3

against Lewis and planned to tender a formal claim with respect to Omega's losses relating to the Azeri Investment.

Omega filed its proof of claim with respect to its Azeri Investment losses on November 28, 2007.  In this proof of claim Omega asserted "(i) a potential loss based on the assertion that Lewis profited from defrauding Omega by retaining funds by Omega for the Vouchers and/or Options, and that Lewis received from Kozeny a significant quantity of Options and/or Vouchers and/or other things of value in compensation for his participation in the scheme; (ii) reimbursement for legal fees and expenses incurred in connection with its discussions, meetings, presentations, etc., with the United States Attorney's office; and (iii) recover of the $500,000 paid to the U.S. government."  Compl. ¶ 27.  Omega specifically advised Federal that, with respect to the fraud that Lewis allegedly perpetrated on Omega, that "the current state of facts may not squarely fall within the Bond's requirement for 'discovery of loss,'" but "counsel's investigation continues."  *Id.* ¶ 28.  Federal acknowledged this claim and took the position that, with respect to any fraud that Lewis may have perpetrated on Omega, Omega should have provided notice to Federal at the time it filed its civil suit in February 2006.  Federal also requested further information about the claim, however, as of November 2007 Omega did not have any further details or evidentiary support of Lewis's misconduct.  As such, by letter dated September 25, 2008, Federal advised Omega that it was closing the file on the matter.

At an unspecified time in "late 2008," Omega obtained information from an unspecified criminal case related to the Azeri privatization program.  Compl. ¶ 32.  Upon review of these materials, Omega discovered that (1) Kozeny gave Lewis millions of dollars worth of Vouchers and/or Options for either no consideration or at prices far less than prevailing market prices and below the price paid by Omega; (2) Lewis sold some of these illicitly obtained Vouchers and

4

Options to Omega at a large markup, secretly profiting approximately $5 million; (3) Lewis received from Kozeny a kick-back of an amount equal to 4% of Omega's potential profit in the Azeri Investment.  On February 26, 2009, Omega provided Federal with this newly-learned information and made a specific claim under the Policy.  Federal responded by letter dated May 27, 2009, disclaiming any coverage under the Policy, "principally on the ground that the 2009 Claim was untimely in that Omega had been aware of the relevant facts at least as far back as February 2, 2006 when it filed the Complaint" in the civil action.  *Id.* ¶ 37.

Omega brings this suit alleging that Federal breached its obligations to Omega under the Policy by (1) refusing to pay for losses arising from Lewis's alleged misconduct on the ground that Plaintiff was obligated to provided notice of claim in 2006, at the time it filed its federal lawsuit against Lewis; and (2) rejecting Omega's 2009 claim as untimely.  Omega seeks damages in the amount of $5 million.

II.     Legal Discussion

A.      Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted.  The Supreme Court refashioned the standard for addressing a motion to dismiss under Rule 12(b)(6) in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  The *Twombly* Court stated that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ... a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  *Id.* at 555 (internal citations omitted); *see also Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir.2007) (stating that standard of review for

motion to dismiss does not require courts to accept as true "unsupported conclusions and unwarranted inferences" or "legal conclusion[s] couched as factual allegation[s]." (internal quotation marks omitted)). Therefore, for a complaint to withstand a motion to dismiss under Rule 12(b)(6), the "[f]actual allegations must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact) ..." *Twombly*, 550 U.S. at 555 (internal citations and footnote omitted).

More recently, the Supreme Court has emphasized that, when assessing the sufficiency of a civil complaint, a court must distinguish factual contentions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). A complaint will be dismissed unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 570). This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 2009 WL 2501662, *5 (3d Cir. August 18, 2009) (citations omitted).

B.   Analysis

Federal argues that there are three grounds for dismissal of Omega's complaint, each of which rely upon a central assertion by Defendant that Plaintiff "discovered" its allegedly covered "loss" no later than February 2, 2006, the date it filed the New York Action. With regard to the discovery of loss, the bonds provide as follows:[1]

> This Bond applies only to loss first discovered by an officer of the ASSURED during the BOND PERIOD. Discovery occurs at the earlier of an officer of the ASSURED being aware of:

---

[1] Although on a motion to dismiss under 12(b)(6) a district court may not consider matters outside of the pleadings, "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

6

    a.    facts which may subsequently result in a loss of a type covered by this Bond, or

    b.    an actual or potential claim in which it is alleged that the ASSURED is liable to a third party, regardless of when the act or acts causing or contributing to such loss occurred, even though the amount of loss does not exceed the applicable DEDUCTIBLE AMOUNT or the Financial Interest in the ASSURED, or the exact amount or details of loss may not then be known.

Affidavit of Michael Maillet ("Maillet Aff.") at Exs. 5 to 9.

The bonds further provide that they do "not directly or indirectly cover: a. loss not reported to the COMPANY in writing within (60) days after termination of this Bond as an entirety." *Id.* As such, Federal's first argument is that Omega's loss is excluded from coverage under the bonds because Omega's August 2007 notice of claim was filed more than sixty days after the expiration of the bond period of the bond in effect at the time Federal alleges Omega discovered the loss.

Federal next argues that dismissal is warranted because Omega's notice of its claim was untimely. The bonds expressly require that "[t]he ASSURED shall give the COMPANY notice at the earliest practicable moment, not to exceed sixty (60) days after discovery of a loss." *Id.* Federal argues that Omega's notice was untimely and, further, under New York law Federal is not required to prove it was prejudiced by the untimely notice.

Last, Federal points to a provision in the bond that require that legal proceedings be commenced within two years of discovery of loss. In this regard, the bonds state: "Legal proceedings for the recovery of any loss under this Bond shall not be brought prior to the expiration of sixty (60) days after the proof of loss is filed with the COMPANY or

7

after the expiration of twenty-four (24) months from the discovery of such loss." *Id.* Thus, according to Federal, Omega's action is untimely under the bond, as Federal argues that Omega's time to commence suit expired on February 2, 2008.

The three grounds for dismissal raised by Federal -- policy exclusion, untimely notice and untimely commencement of suit -- are affirmative defenses. The Third Circuit has noted that "[g]enerally speaking, [courts] will not rely on an affirmative defense … to trigger dismissal of a complaint under Rule 12(b)(6)." *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). However, "when an affirmative defense is 'apparent on the face of a complaint', it may be appropriate for a court to dismiss an action pursuant to a Rule 12(b)(6) motion." *Id.* In determining whether an affirmative defense provides an appropriate basis for dismissal on a 12(b)(6) motion, in addition to the allegations in the complaint a court may properly consider matters of which a court may take judicial notice. *See O'Boyle v. Braverman*, 337 F. App'x 162, 164 (3d Cir. 2009). As such, a court may consider, for example, public records, including judicial proceedings. *Id.* Judicial notice, however, should be used "sparingly" in the early stages of a case. *Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3rd Cir. 2007). "Only in the clearest of cases should a district court reach outside the pleadings for facts necessary to resolve a case at that point." *Id.*

As noted above, central to Federal's motion is the question of when "discovery" of Omega's loss occurred. The bonds at issue are discovery bonds, that is, they covered losses that were discovered during the bond period, regardless of when such losses were sustained. Under the bonds, discovery of a loss occured when Omega became aware of "facts which may subsequently result in a loss of a type covered by this Bond . . . regardless of when the act or acts causing or contributing to such loss occurred, even though . . . the exact amount or detail of loss

may not then be known." Maillet Aff. at Exs. 5 to 9. To constitute "discovery" of a loss, an insured must the insured must possess "more than mere suspicions of employee dishonesty or fraud." *Resolution Trust Corp. v. Fidelity and Deposit Co. of Maryland*, 205 F.3d 615, 630 (3d Cir. 2000); *see also Utica Mut. Ins. Co. v. Fireman's Fund Ins. Companies*, 748 F.2d 118, 121 (2d Cir. 1984) ("mere suspicions do not trigger the notice requirement").[2] "Courts long have recognized the principle that unsupported suspicions of employee misconduct do not constitute discovery in the fidelity bond context." *Id.*

Federal argues that Omega discovered its loss no later than February 2, 2006, the date it filed the New York action. In this regard, Federal points to specific allegations in the complaint from that action, of which this Court takes judicial notice:

> 45. On information and belief, Lewis profited directly from defrauding Omega by retaining certain of the funds paid by Omega for the Vouchers and/or Options. In addition, on information and belief, Lewis received from Kozeny a significant quantity of Options and/or Vouchers and/or other things of value in compensation for his participation in the scheme.
>
> * * *
>
> 55. Moreover, on information and belief, as a result of Lewis's wrongful acts Omega paid excessive prices for Vouchers and/or Options.
>
> * * *
>
> 70. At all relevant times, Lewis owed fiduciary duties to Omega. Lewis's duties as a fiduciary arose from his status as an employee of Omega Advisors, his position as an agent for Omega, and his position as an investment advisor to Omega, in which capacities he was entrusted with faithfully managing Omega's financial affairs. Lewis breached his fiduciary duties to Omega by, among other things:
>
> a. knowingly inducing Omega to enter into an investment that it never would have made had it known of Kozeny's claims of corrupt arrangements with the Azeri Officials;

---

[2] Federal argues that under the appropriate choice of law analysis, New York law governs Plaintiff's claims in this case. Omega, on the other hand, argues that New Jersey law applies. Because the Court finds that outcome of this motion is the same regardless of which law is applied, the Court does not reach the choice of law question.

9

>   b.  knowingly causing Omega to purchase Vouchers and/or Options under terms and conditions and/or from sources that violated the terms of Omega's Agreements with Oily Rock and Minaret;
>
>   c.  knowingly profiting at Omega's expense in connection with Omega's purchases of Vouchers and/or Options; and
>
>   d.  concealing from Omega Kozeny's claims of corrupt arrangements with the Azeri Officials, and his own knowledge and awareness thereof.

Simmons Aff. at Ex. 2.

Federal also points to a Memorandum of Law dated August 24, 2006 that was filed by Omega in the New York action in opposition to a motion to dismiss. In that memorandum, of which the Court also takes judicial notice, Omega stated the following with respect to the claims it asserted against Lewis in that action:

>   Plaintiffs' complaint sets out in detail defendant's misconduct, including that Lewis violated the contractual and common law fiduciary duties he owed to plaintiffs as an employee of Omega advisors and as Investment Advisor to the plaintiff funds. The complaint alleges:
>
>   * * *
>
>   iii)   Lewis profited from his relationship with Kozeny by siphoning funds from plaintiffs' investment into Lewis' own pockets and by accepting privatization instruments from Kozeny.

(Simmons Aff., Ex. 3 at 2).

Additionally, in describing the parameters of Kozeny's alleged fraud, Omega stated the following with respect to Lewis's involvement in that fraud:

>   In utter disregard of his duty as a fiduciary, Lewis allowed this to happen. And he was well paid for his silence. As the complaint alleges, Lewis, with Kozeny's assistance, helped himself to both cash out of Omega's investment pool and was further remunerated in Vouchers and Options by Kozeny.

(*Id.* at 6).

The memorandum of law also included the following statements concerning Lewis's alleged wrongful conduct and damages suffered by Omega:

> Even if their entire investment were not lost, plaintiffs sustained damages due to the markups charged on the options they purchased. . . Finally, plaintiffs lost the money embezzled by Lewis. All of these damages were directly and proximately caused by Lewis's misconduct.
>
> * * *
>
> Lewis concealed staggering mark-ups of the financial instruments Omega purchased, corrupt relationships with Azeri officials and violations of United States law to induce Omega to invest in Azeri privatization, knowing that Omega would not have invested had Lewis disclosed this information. Moreover, the fact that Lewis was profiting from the fraud by skimming funds and financial instruments out of Omega's investment and into his own account.
>
> * * *
>
> The complaint alleges that Kozeny illicitly sold Omega options from his own stockpile and at incredible mark-ups, even though he had explicitly agreed to purchase them only from the government or on the open market and not to charge Omega any mark-up. Lewis knew that Kozeny was engaging in this practice, but he did nothing to alert Omega. Indeed, he took his own cut from Kozeny.
>
> * * *
>
> As a direct result of Lewis' fraud and his breach of contractual and common law fiduciary duties, Omega was directly caused to overpay significantly for its options, overpayments that resulted in an immediate loss to Omega of tens of millions of dollars. Thus, Lewis's failure to disclose the conspiracy he had joined with Kozeny and the overpayment scheme he was perpetrating as part of that conspiracy was the direct and proximate cause of these enormous losses.

(*Id.* at 7-15) (citations omitted).

Under New Jersey law, "'[d]iscovery' of a loss under a fidelity bond occurs when the insured learns facts or obtains knowledge which would justify a careful and prudent person in charging another with dishonesty or fraud." *National Newark and Essex Bank v. American Ins. Co.*, 76 N.J. 64, 80, 385 A.2d 1216, 1224 (N.J. 1978). New York law defines such discovery similarly: "A loss is 'discovered' once an insured has obtained facts sufficient to cause a reasonable person to recognize that there has been dishonesty or fraud resulting in loss."

*Commodore Intl. v National Union Fire Ins. Co.*, 184 A.D.2d 19, 21, 591 N.Y.S.2d 168 (App. Div. 1992).[3]  Applying these standards here, the Court finds that Omega's discovery of loss occurred no later than February 2, 2006.

Omega argues that as of February 2006, when it commenced the New York action, it "merely had indirect indications of Lewis's misconduct," and "did not have sufficient facts in its possession to determine there would be a loss covered under the policy."  Pl. Brf. at 12.  However, as made clear by the filing of a federal lawsuit containing the allegations detailed above, Omega had more than mere suspicions that Lewis engaged in wrongdoing.  It had knowledge of facts sufficient to charge Lewis with fraud and dishonesty in federal court in February 2006.   Indeed, the bonds do not require absolute proof of a loss or the amount of the loss.  Rather, they require only that the insured become aware of "facts which may subsequently result in a loss of a type covered by" the bonds "even though . . . the exact amount or detail of loss may not then be known."  Maillet Aff. at Exs. 5 to 9.  By "presenting to the court" the complaint and the memorandum of law in the New York action, Omega's counsel certified that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances … the factual contentions have evidentiary support or … will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11.  Therefore, the Court finds that Omega discovered its loss no later than February 2006.

Having made that determination, the Court now turns to Federal's first argument for dismissal, specifically, that the loss is excluded from coverage under the terms of the bond.  Having discovered the loss in February 2006, the loss is covered by the bond with the Bond Period of April 13, 2005 to April 13, 2006.  *See* Maillet Aff., Ex. 5 at 16 (bond applies to loss

---

[3] *See* footnote 2.

discovered during bond period). This bond expressly excludes from coverage "loss not reported to [Federal] in writing within sixty (60) days after termination of this bond as an entirety." *Id.* at 12. As such, the coverage under the bond was available for losses that were discovered during the bond period and reported to Federal by June 12, 2006. Omega discovered its loss during the bond period, but did not report the loss to Federal until 2007. Consequently, under the express terms of the bond, the loss is excluded from coverage.

The Court rejects Omega's contention that it experiences two separate and independent losses in connection with Lewis's conduct. Omega asserts that the loss reported by it to Federal in 2009 with respect to Lewis's alleged participation in fraudulent activity with Kozeny and companies controlled by Kozeny is distinguishable from the loss discovered in February 2006. This alleged loss is premised on Omega's discovery in late 2008 that Kozeny gave millions of dollars worth of Vouchers and/or options to Lewis for no consideration or at prices below prevailing market prices; that Lewis sold some of these to Omega at a massive markup; and that Kozeny gave Lewis an interest in the future profits of Minaret Group Ltd., a company controlled by Kozeny, derived from the sale of Omega's Voucher's and Options. Compl. ¶ 32.

Each of Federal's bonds provides a "Single Loss Limit of Liability" for employee dishonesty in the amount of $5,000,000. The term "Single Loss" is defined as

> s.  Single Loss means all covered loss, including court costs and attorneys' fees incurred by [Federal] under General Agreement E., resulting from:
>
> (1)  any one act of burglary, robbery or attempt at either, in which no Partner or Employee is implicated, or
>
> (2)  any one act or series of related acts on the part of any natural person resulting in damage, destruction, or misplacement of Property, or
>
> (3)  all acts other than those specified in s. (1) and s.(2), caused by any natural person or in which such person is implicated, or

13

   (4)  any one event not specified in s.(1), S.(2) or S.(3).

Ex. 5 at 11.  Under this provision, all acts of Clayton Lewis in connection with the Azeri Investment that caused loss to Omega resulted in a single loss.  Therefore, under the bonds, there cannot be a newly discovered loss separate and distinct from the loss discovered by Omega in 2006.  *Cf. F.D.I.C. v. Fidelity & Deposit Co. of Maryland*, 45 F.3d 969, 974 (5th Cir. 1995) (later discovered acts were part of same loss discovered during bond period if they "arose out of the same pattern of conduct or scheme that was originally discovered.")

  As the above analysis is dispositive of the motion, the Court need not reach Defendant's remaining arguments.

**III.** **Conclusion**

  For the reasons above, Defendant's motion to dismiss shall be granted.  An appropriate Order accompanies this Opinion.

              /s/ JOEL A. PISANO
              United States District Judge

Dated:  November 30, 2010